UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARNEST RAY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | |
| v. ) | Case No. 4:16-CV-00204-SPM |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Earnest Ray ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 3). For the following reasons, the petition for a writ of habeas corpus will be denied.

**I. FACTUAL BACKGROUND**

The following background is taken from the Missouri Court of Appeals' opinion affirming Petitioner's conviction on direct appeal:

> Cheryl Kyles (Kyles) is an assistant store manager at City Gear, a retail store. At approximately 7:30 p.m. on January 27, 2012, she was working at City Gear, and she saw a group of people enter the store wearing hoodies that were tied tightly around their face[s]. In accordance with City Gear's store policy, Kyles asked them to remove their hoodies or leave the store. She said they left, but then 30 to 45 minutes later, five or six people came back, again wearing hoodies. She asked them to remove their hoodies, and one of them punched her in the mouth. Kyles dropped to the floor and hid under a clothing rack until she felt it was safe to come out.

During this time, Kenya Ballard (Ballard), an assistant manager at City Gear, was sitting in her car outside the store, taking her break. Ballard saw a person run out of City Gear holding a lot of clothes, and she assumed that the store was being robbed. Ballard got out of her car to see where the person was running, and she saw the person get into a red two-door vehicle. Ballard saw more men running out of the store with arms full of clothing, and then she saw [Petitioner] come out of the store holding a cash register and a gun. She noticed he had a star tattoo under his right eye.

Another employee of City Gear, Howard Shelton (Shelton), had been sitting in the car with Ballard, also taking his break. When he saw the people running from the store, he chased them. He tried to reach for the cash register [Petitioner] was holding and saw [Petitioner] face to face. [Petitioner] pulled the cash register away, pointed the gun at Shelton, and said "Don't make me shoot you."

A few days later, on January 31, 2012, Kyles, Ballard, and Shelton were working at the store when [Petitioner] came in again. They noticed the clothes and hat that [Petitioner] was wearing looked the same as some of the clothes that were stolen a few days earlier. Ballard followed [Petitioner] out to his car. As he drove away Ballard obtained the license plate number from the car and called the police.

When police arrested [Petitioner], he made the following statement:

I've been identified, so I guess you have your case. Why don't you show me on camera that I robbed that place. You can't because they don't have cameras. . . . you can't prove nothing that's not on camera.

Police arranged a photographic lineup and a live lineup, and the witnesses to the robbery identified [Petitioner] in both.

The State charged [Petitioner] as a prior offender with first-degree robbery and armed criminal action. The jury convicted [Petitioner] on both counts. The trial court sentenced [Petitioner] to concurrent prison terms of eleven years for robbery and three years for armed criminal action.

Resp't Ex. E, at 2-3.[1]

In his direct appeal, Petitioner raised two claims: that the trial court abused its discretion in allowing certain closing argument statements by the State, and that the trial court plainly erred

---

[1] For Respondent's Exhibits, all page numbers refer to the pagination placed on the Exhibit by Respondent in the lower-right-hand corner of the page, immediately below the Respondent's Exhibit letter.

in allowing Juror 786 to serve on the jury at his trial. Resp't Ex. B, at 14-15. The Missouri Court of Appeals conducted a plain error review of both claims and denied them both. Resp't Ex. E.

In the instant *pro se* petition, Petitioner asserts two grounds for relief: (1) that the trial court erred in allowing the State to argue facts outside the record, in closing argument, about the use of guns in killings in Iraq, Afghanistan, and on the streets of St. Louis, in that the argument was improper and calculated to arouse the passions and prejudices of the jury; and (2) that the trial court erred in failing to grant a mistrial because Juror 786, Kerri Brown, intentionally failed to disclose, until the second day of trial, that she knew and recognized the name Howard Shelton, a prosecution witness in this case; Petitioner argues that this undisclosed information was requested on *voir dire* and material and that the non-disclosure prejudiced the Petitioner by affecting the jury's verdict.

## II. LEGAL STANDARDS

### A. Legal Standard for Reviewing Claims on the Merits

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[I]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the State court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. *See also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted). *See also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### B. Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for

4

the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### III. DISCUSSION

#### A. Ground One: Improper Statements in Closing Argument Regarding Guns

In Ground One, Petitioner argues that the trial court erred in allowing the State to make statements in closing argument about the use of guns in killings in Iraq, Afghanistan, and in the City of St. Louis. Petitioner argues that these statements referred to facts outside the record and that the statements were improper and calculated to arouse the passions and prejudices of the jury. Petitioner did not include this claim in his motion for a new trial, Resp't Ex. D, at 60-61, but he did raise this claim on direct appeal, Resp't Ex. B, at 16-19. Because this claim was not included Petitioner's motion for a new trial, the Missouri Court of Appeals determined that the claim was not preserved for appeal and thus warranted plain error review only, which required Petitioner to show facially substantial grounds for believing that the trial court's error was evident, obvious, and clear and that manifest injustice or miscarriage of justice had resulted. Resp't Ex. E, at 4-5.

5

The Missouri Court of Appeals denied the claim. *Id.* at 5-6. Specifically, the court stated, "Even assuming *arguendo* that reference to killings in Iraq and Afghanistan was improper, the element of whether the gun was a deadly weapon was undisputed and unrelated to [Petitioner's] defense of misidentification" and there were not "facially substantial grounds for believing the State's argument in this respect had a decisive effect on the jury such that manifest injustice or a miscarriage of justice resulted." *Id.* at 6.

As a preliminary matter, the Court notes that it appears that this claim may have been procedurally defaulted based on Petitioner's failure to raise it in a motion for new trial. Although the Missouri Court of Appeals reviewed the claim for plain error, a state court's discretionary plain-error review of unpreserved claims cannot excuse a procedural default. *Clark v. Bertsch*, 780 F.3d 873, 877 (8th Cir. 2015)*; see also Clayton v. Steele*, No. 4:14-CV-1878-RLW, 2018 WL 1382401, at *6 (E.D. Mo. Mar. 16, 2018) (finding the petitioners' claim of trial court error in admission of evidence was procedurally barred where the Missouri Court of Appeals reviewed the claim only for plain error because it had not been raised in the motion for new trial); *Floyd v. Griffith*, No. 4:15CV1145 JCH, 2016 WL 199078, at *1 (E.D. Mo. Jan. 15, 2016) (same). However, Respondent did not raise the issue of procedural default in his brief, and the Eighth Circuit has held that the district court should not *sua sponte* decide a case based on a procedural default without giving the parties fair notice and an opportunity to present their positions. *See Dansby v. Hobbs*, 766 F.3d 809, 824 (8th Cir. 2014); *accord Deck v. Steele*, No. 4:12–CV–1527–CDP, 2015 WL 5885968, at *2 (E.D. Mo. Oct. 8, 2015). The Eighth Circuit has recognized that "judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155,

1162 (8th Cir. 1999). Because this claim is easily resolved against Petitioner on its merits, the Court need not reach the question of procedural default.

Assuming, *arguendo*, that this claim has not been procedurally defaulted, or that Petitioner could show cause and prejudice to excuse the procedural default, the Court finds the claim to be without merit. Even applying a *de novo* standard of review, it is clear that Petitioner is not entitled to habeas relief.

"Improper remarks by the prosecutor can violate the Fourteenth Amendment if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Barnett v. Roper*, 541 F.3d 804, 812 (8th Cir. 2008) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See also Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006) ("To grant habeas relief based on an inappropriate comment from a prosecutor, the comment must be so inappropriate as to make the trial fundamentally unfair"). To grant habeas relief based on an improper remark by a prosecutor, "[t]here must be a 'reasonable probability' that the error affected the jury's verdict and that without the error, the jury's verdict would have been different." *Id.* (citing *Newton v. Armontrout,* 885 F.2d 1328, 1336-37 (8th Cir. 1989)). *See also Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (stating that to obtain habeas relief based on improper remarks by a prosecutor, "[a] petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'") (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)).

To convict Petitioner of first-degree robbery, the State was required to prove that Petitioner "forcibly st[ole] property and, in the course thereof . . . display[ed] or threaten[ed] the use of what appear[ed] to be a deadly weapon or dangerous instrument." Mo. Rev. Stat. § 569.020 (2012). For

armed criminal action, the State was required to show that Petitioner committed a felony "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." Mo. Rev. Stat. § 571.015.1. The State introduced testimony at trial that Petitioner used a gun to forcibly steal money from the City Gear store. Resp't Ex. A, at 256, 258, 310, 333-334, 340, 351-355, 403-404. During closing argument, after addressing the facts of the case, in making her argument as to why each element of the crimes was satisfied, the prosecutor argued that the deadly weapon elements of both crimes were satisfied. The prosecutor stated:

> [F]ourth, that in the course of the taking, the defendant displayed what appeared to be a deadly weapon. And we know it was a deadly weapon because it was a gun.
> Number six is the armed criminal action. So that's saying he used a gun with the robbery. And the first element is that he committed the robbery, which I just explained to you why we know he did. And, second, that the defendant committed that offense by, with the knowing use, assistance, or aid of a deadly weapon.
> Ladies and gentlemen, we know guns are deadly, right, because they kill people every day. They kill people every day on the City of St. Louis on the streets. They kill people in Iraq. They kill people in Afghanistan.

Resp't Ex. A at 496. Petitioner's counsel objected to this argument, and the objection was overruled by the trial court. *Id.* at 496. The prosecutor went on to say:

> They kill every day. They are deadly. And you know what, people like the defendant, they use guns because they want to say, I'm scaring you. You know what, I like your earrings, so take that, I get to take them. They use guns to scare. Criminals in the City of St. Louis use guns to scare. And, yes, are they scary? They sure are. But you know what, they're also deadly, and people die being shot every single day.

Resp't Ex. 496-97.

In his own closing argument, Petitioner's counsel did not argue that guns were not deadly weapons or that the crimes were not committed using a gun. Instead, his defense was that Petitioner was at his girlfriend's house at the time of the crime and that he had been mistakenly identified by the witnesses and victims. *Id.* at 497-508. Indeed, part of Petitioner's counsel's argument was that

8

the presence of the gun frightened and distracted the witnesses, making their testimony less reliable. *Id.* at 502, 507-08.

The trial transcript shows that the issue addressed by the objected-to comments regarding the deadliness of guns in Iraq, Afghanistan, and the City of St. Louis was unrelated to any issue in dispute in the trial. There was no dispute at trial that a gun is a deadly weapon, nor was there any dispute about whether a gun was used in the crime. These comments were unrelated to the disputed issue in the case: whether Petitioner was actually the individual who committed the crime. Because the comments related only to an undisputed issue, and were unrelated to Petitioner's defense of witness misidentification or any disputed issue in the case, there is no reasonable probability that the outcome of the trial would have been different had these remarks not been allowed.

For all of the above reasons, Petitioner is not entitled to relief on Ground One.

### B. Ground Two: Juror's Failure to Disclose That She Knew a Witness

In Ground Two, Petitioner argues that the trial court erred in failing to grant a mistrial because Juror 786, Kerri Brown, intentionally failed to disclose, until the second day of trial, that she knew and recognized the name Howard Shelton, a prosecution witness in the case. Petitioner claims this undisclosed information was requested on *voir dire*, is material, and prejudiced the Petitioner by affecting the jury's verdict. Petitioner raised this claim in his direct appeal. Resp't Ex. B, at 20. Petitioner did not include this claim in his motion for a new trial, Resp't Ex. D, at 60-61, but he did raise this claim on direct appeal, Resp't Ex. B, at 20-33. The Missouri Court of Appeals reviewed the claim for plain error and denied it. Resp't Ex. E, at 6-8.

The facts relevant to this claim are as follows. At the beginning of jury selection, the prosecutor read a list of witness names and asked whether the jurors recognized any of those

names. Resp't Ex. A, at 15. The name "Howard Shelton" was not mentioned. *Id.*[2] No hands were raised. *Id.* The prosecutor did use the name "Howard Shelton" later during *voir dire* and the opening statement, but did not ask if anyone knew him. *Id.* at 53, 236-37, 242-43.

The day after Mr. Shelton testified, the trial transcript contains the following exchange:

| | |
|---|---|
| THE COURT: | Ms. Brown, I was handed a message from my deputy sheriff that states, quote, Judge, Juror No. 786, Kerri Brown, stated that she knows the last witness from yesterday. |
| JUROR BROWN: | That's correct. |
| THE COURT: | Now, that last witness was Howard Shelton, and you've heard his name mentioned from the very beginning of this trial till just a few minutes ago; is that correct? |
| JUROR BROWN: | Yes, sir. |
| THE COURT: | Do you know him personally or just by face recognition or name recognition? |
| JUROR BROWN: | He attended grade school with my son, and they had a relationship. They had a relationship where they spent the night over at my house and all that kind of kid stuff. |
| THE COURT: | Okay. So you've known him for quite a while? |
| JUROR BROWN: | Yes. |
| THE COURT: | Is there—is there anything from your knowledge of Mr. Shelton and your we'll say neighborhood friendly relationship with him and perhaps his family that would impact on your being impartial and fair to both the state and to the defendant? |
| JUROR BROWN: | You know, I would have said something earlier, but there is another Kerri Brown, and I heard the name, but I wasn't sure that was the same person. So when |

---

[2] It appears that the prosecutor may have mistakenly stated his name as "David Howard." Resp't Ex. A, at 15.

|               |                                                                                                                                                                                                                                                                                             |
| ------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | he entered the courtroom, I didn't think I could disturb the court going on at the time, so that's why I grabbed the sheriff afterwards. But I thought it important that both attorneys know that I knew him. But to answer your question, honestly, he was one of my kids little friends, you know. He wasn't involved, so I don't think that it would impact anything that I've heard. |
| THE COURT:    | Have you at this point formed any opinion as to the defendant's guilt or innocence?                                                                                                                                                                                                         |
| JUROR BROWN:  | You know, I'm weighing the pros and cons I hear, and then I hear something to dispute what I've already thought, and it's going back and forth, you know.                                                                                                                                   |
| THE COURT:    | You can still be fair and impartial?                                                                                                                                                                                                                                                        |
| JUROR BROWN:  | Yes.                                                                                                                                                                                                                                                                                        |

*Id.* at 451-52.

Counsel then approached the bench, and defense counsel asked the court to inquire further about Juror Brown's and Juror Brown's son's recent relationship with Mr. Shelton. *Id.* at 453. The following exchange then occurred:

|               |                                                                                                                                                              |
| ------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------ |
| THE COURT:    | You stated that Mr. Shelton and your son were boyhood buddies and that he would be over at your house and vice versa with your son at the Shelton residence; is that correct? |
| JUROR BROWN:  | Yes.                                                                                                                                                         |
| THE COURT:    | And does Mr. Shelton's family still occupy the same house?                                                                                                   |
| JUROR BROWN:  | His dad moved into his grandmother's home in Jennings. Howard still stays—I just saw him. He still stays in the old family home on Queens.                   |
| THE COURT:    | Do you—when was the last time you saw Mr. Shelton before yesterday when he came into testify?                                                                |
| JUROR BROWN:  | I haven't seen Howard in some years.                                                                                                                         |

| | |
|---|---|
| THE COURT: | Okay. |
| JUROR BROWN: | But I often see his dad out. |
| THE COURT: | Okay. And do you know whether your son and Howard Shelton have maintained a friendly relationship over the years? In other words— |
| JUROR BROWN: | No. |
| THE COURT: | Do they still— |
| JUROR BROWN: | They don't travel in the same circles. |
| THE COURT: | Okay. Ma'am, thank you very much. You can go up and join the rest of the jurors at this time. Thanks. |

(Juror Brown left the courtroom.)

| | |
|---|---|
| THE COURT: | Anything else? |
| [DEFENSE COUNSEL]: | May I confer with my client? |
| THE COURT: | Yes. If—just to let you know, if I were to excuse her—I'm not inclined to do so. I think she was a pretty fair person. |
| [DEFENSE COUNSEL]: | Um-hum. |
| THE COURT: | She works in the accounting department over at—she works in the accounting department over at city hall, I think as a supervisor. Then I would put the first alternate in her spot. |
| [DEFENSE COUNSEL]: | Um-hum. |
| THE COURT: | Okay. Just so your— |
| [DEFENSE COUNSEL]: | I kind of figured that. |
| THE COURT: | So your client knows what the alternative is. |
| [DEFENSE COUNSEL]: | Okay. |

*Id.* at 453-55. The record does not reflect any further discussion of Juror Brown.

The Missouri Court of Appeals reviewed the claim for plain error under Missouri Supreme Court Rule 30.20, addressing whether there were facially substantial grounds for believing the trial court's error was evident, obvious, and clear and that a manifest injustice or miscarriage of justice had resulted. Resp't Ex. E, at 7. The Missouri Court of Appeals found this standard was not met. *Id.* The court first concluded that the facts did not establish substantial grounds for believing that Juror Brown had intentionally failed to disclose her relationship with Howard Shelton, resulting in manifest injustice or a miscarriage of justice. *Id.* at 8. The court noted that when the State asked whether the venire panel knew any of its witnesses, Mr. Shelton's name was not among the names listed, and that "as soon as [Juror Brown] realized she knew Mr. Shelton, she came forward." *Id.* at 8. The court also noted that after questioning Juror Brown, "[t]he trial court made a finding that she could be fair and stated that it was not inclined to exclude her," and that despite Petitioner's counsel being given the opportunity to exclude her, the record does not show that he did so. *Id.* The Court concluded that "in light of the trial court's findings regarding her ability to be impartial, we fail to see facially substantial grounds for believing the trial court plainly erred in failing to *sua sponte* declare a mistrial based on Juror 786's acquaintance with Shelton." *Id.*

As with Ground One, it appears possible that this claim may have been procedurally defaulted due to Petitioner's failure to preserve it at trial or in a motion for new trial; however, because a procedural default issue was not raised by Respondent, the Court will not *sua sponte* decide the procedural default question. As with Ground One, even assuming, *arguendo*, that this claim has not been procedurally defaulted or that Petitioner could show cause and prejudice to excuse the procedural default, the Court finds the claim to be without merit even under a *de novo* standard of review.

To the extent that Petitioner's claim is that the Missouri Court of Appeals erred, as a matter of Missouri law, in assessing his claim that Missouri law required a new trial based on Juror Brown's intentional failure to disclose that she knew Mr. Shelton, such a claim is not cognizable on federal habeas review. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (quotation marks omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions."); *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."); *Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas.").

In addition to asserting errors of state law, Petitioner also appears to be asserting a claim that his Sixth Amendment right to a trial before a fair and impartial jury was violated by Juror Brown's presence on the jury. The Sixth Amendment guarantees a defendant the right to be tried by an impartial jury, and the due process clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976) (citing *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968)). *See also Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016). This "constitutional guarantee has not been granted if any member of the jury was biased." *Johnson v. Armontrout*, 961 F.2d 748, 751 (8th Cir. 1992). Where a habeas petitioner claims that a juror's failure to disclose a fact during *voir dire* resulted in a violation of his Sixth and Fourteenth Amendment rights, the petitioner's burden is "not only to show that a juror failed to disclose a material fact during *voir dire*, but also to establish that the juror was in fact biased." *Fuller v. Bowersox*, 202 F.3d 1053, 1056 (8th Cir. 2000) (internal citations omitted). *See also Caery v. Kelley*, No. 6:14-CV-06106, 2016 WL 3950956, at *3 (W.D. Ark. Feb. 19, 2016)

("When raising a claim of juror bias, a petitioner must make two required showings: (1) the juror must have failed to disclose a material fact during *voir dire*; and (2) that juror must in fact be biased."), *report and recommendation adopted*, No. 6:14-CV-06106, 2016 WL 3945746 (W.D. Ark. July 19, 2016); *Collins v. Steele*, No. 4:11-CV-328 CAS, 2014 WL 752568, at *4 (E.D. Mo. Feb. 25, 2014) ("To be entitled to habeas relief on the basis of a juror's failure to disclose a material fact during *voir dire*, a petitioner bears the burden not only to show that a juror failed to disclose the information but also to establish that the juror was in fact biased."). "Because the central concern in habeas cases is the fundamental fairness of the proceeding, the focus is on bias, and only those reasons for failing to disclose information that affect a juror's impartiality can truly be said to affect the fundamental fairness of a trial." *Fuller*, 202 F.3d at 1056 (internal citations and quotation marks omitted).

Petitioner is not entitled to habeas relief in this case, because he cannot show that Juror Brown was biased. First, the Court notes that the trial judge appears to have made a determination that Juror Brown was not biased. After questioning Juror Brown about the nature of her acquaintance with the witness and her ability to remain fair and impartial, the trial judge stated that he was "not inclined" to excuse her because he "think[s] she's a pretty fair person." Resp't Ex. A, at 455. To the extent that this constitutes a finding that Juror Brown was not biased, that finding is entitled to substantial deference. *See Munt*, 829 F.3d at 615-16 (noting that "the trial court [is] in a unique position to make the necessary credibility determination" regarding the question of bias, that the trial court's determination as to juror bias is entitled to "substantial deference," and that the federal habeas court "will not second-guess such a determination absent clear and convincing evidence."). *See also Williams v. Norris*, 612 F.3d 941, 954 (8th Cir. 2010) ("Whether a juror is biased against the defendant is a question of fact, and [the court reviewing a

habeas petition] will defer to the state court's finding 'if it is fairly supported by the record.'") (quoting *Mack v. Caspari*, 92 F.3d 637, 642 (8th Cir. 1996)); *Wainwright v. Witt*, 469 U.S. 412, 428 (1985) (noting that a finding regarding juror bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province"). The trial judge's determination that Juror Brown could be fair was supported by Juror Brown's statements on the record, and Petitioner points to no evidence that would undermine the trial judge's finding that Juror Brown could be fair.

In the alternative, even if the trial court's statements do not rise to the level of a finding that Juror Brown was not biased, Petitioner cannot show bias in this case. "For habeas corpus purposes, [juror] 'bias may be found either by an express admission, or by proof of specific facts which show such a close connection to the facts at trial that bias is presumed.'" *Fuller*, 202 F.3d at 1056 (quoting *Burton v. Johnson*, 948 F.2d 1150, 1158 n. 10 (10th Cir. 1991)). The Eighth Circuit has emphasized that a presumption of bias is only appropriate in "extreme" or "exceptional" situations, such as "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal action, or that the juror was a witness or somehow involved in the criminal transaction." *Sanders v. Norris*, 529 F.3d 787, 792-93 (8th Cir. 2008) (quoting *Smith v. Phillips*, 455 U.S. 209, 222 & n.102 (1981) (O'Connor, J., concurring)). *See also Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 843-44 (8th Cir. 2015). The Eighth Circuit has also noted that some courts have presumed bias under "circumstances that have the 'potential for substantial emotional involvement," citing a Ninth Circuit case where the court presumed prejudice by employees of a different branch of the same bank that the defendant was accused of robbing, and a Tenth Circuit case involving battered-wife syndrome where the court imputed bias to a juror who, at the time of trial, was married to a

man who had physically abused her. *Sanders*, 529 F.3d at 793-94 (citing *United States v. Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977), and *Burton*, 948 F.2d at 1159).

In this case, there was no express admission of bias. To the contrary, after Juror Brown told the trial court that Mr. Shelton had been a childhood friend of her son, she expressly told the trial court that she did not think that her acquaintance with Mr. Shelton would impact anything that she had heard, and that she could still be fair and impartial. Resp't Ex. A, at 452.

Moreover, there are no facts from which bias could be presumed. Juror Brown was not an employee of the prosecutor's office. She was not a witness to the criminal transaction, nor was she involved in it. She was not a "close relative" of anyone related to the case. There is no evidence of circumstances suggesting that she would have some particular emotional involvement in the case or the issues raised. Juror Brown's only connection to the case was that she knew one of the witnesses because he had been friends with her son in childhood. She testified that she had not seen the witness in several years, and that the witness and her son no longer traveled in the same circles. These circumstances do not come close to the extreme circumstances under which the Eighth Circuit has suggested juror prejudice may be implied or presumed. *See Sanders*, 529 F.3d at 792-94.

Petitioner suggests that Juror Brown's bias is shown by the fact that she "intentionally failed to disclose" the fact that she knew Mr. Shelton. However, the record does not show any such intentional failure to disclose. When the jurors were asked whether they knew any of the witnesses, Mr. Shelton's name was not mentioned, so no inferences can be drawn from Juror Brown's failure to indicate that she knew Mr. Shelton at that time. Later, after Juror Brown saw Mr. Shelton testify and realized that she knew him, she disclosed that fact as soon as she felt she could do so. There

is simply nothing in the record to suggest that Juror Brown intentionally failed to disclose her acquaintance with Mr. Shelton.

In sum, there is no evidence that Juror Brown was biased, and therefore Petitioner cannot show that his Sixth Amendment rights were violated by the trial court's failure to grant a mistrial based on Juror Brown's presence on the jury. Thus, Petitioner is not entitled to relief on Ground Two, and Ground Two will be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate judgment shall accompany this Memorandum and Order.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of March, 2019.